IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| CHRISTOPHER L. CARTER,<br>*pro se* Plaintiff, | )<br>)<br>) |
| v. | )    Civil No. 3:13cv299 (REP) |
| | ) |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br>Defendant. | )<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

Christopher L. Carter ("Plaintiff"), proceeding *pro se*, is 55 years old and previously worked at Philip Morris and as a mechanic. Plaintiff applied for disability insurance benefits ("DIB") and supplemental social security income ("SSI"), claiming disability from chest, neck, back and shoulder pain and diabetes with an alleged onset date of September 10, 2010. The Agency denied Plaintiff's claims both on initial consideration and reconsideration. An administrative law judge ("ALJ") held an administrative hearing and issued an opinion determining that Plaintiff was not disabled under the Act. On April 9, 2013, the Appeals Council denied Plaintiff's request for review. Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) on Plaintiff's Motion for Summary Judgment (ECF No. 12)[1] and Defendant's Motion for Summary Judgment and Memorandum in Support (ECF No. 13).

---

[1] Although Plaintiff's styled this filing as "Answer," "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). In his "Answer," Plaintiff argued that the ALJ improperly evaluated Plaintiff's pain and other conditions. The Court, therefore, will treat Plaintiff's motion as a motion for summary judgment.

The parties have submitted cross motions for summary judgment, which are now ripe for review.[2] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Because Plaintiff challenges the ALJ's decision, Plaintiff's education and work history, medical history, state agency medical opinion, reported activities and testimony are summarized below.

### A. Education and Work History.

Plaintiff completed the tenth grade. (R. at 28-29.) Between 1979 and 1999, Plaintiff worked at Philip Morris. (R. at 189.) Between 2000 and 2002, Plaintiff worked as a mechanic at Greyhound. (R. at 189.)

### B. Medical History.

Eight years before Plaintiff's alleged onset date, he sustained a neck and back injury in a motor vehicle accident. (R. at 243-44.) Joseph Andriano, M.D. assessed that Plaintiff had a neck strain. (R. at 243.) Dr. Adriano reviewed stretching exercises with Plaintiff. (R. at 243.) Plaintiff was placed on light duty then subsequently on full duty, and Dr. Andriano advised Plaintiff to follow-up should he have any other problems. (R. at 243.)

---

[2] The administrative record in this case has been filed under seal pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Four years before his alleged onset date in August 2006, Plaintiff went to the emergency room complaining of chest pain and tightness. (R. at 247.) Thomas J. Murphy, M.D. diagnosed Plaintiff with pleurisy, which is the inflammation of the membrane surrounding the chest cavity and lungs, and with chest pain. (R. at 242, 247.)

In September 2009, Brian Neeley, M.D. noted that oral hypoglycemic medications managed Plaintiff's diabetes. (R. at 251.) Dr. Neeley further noted that Plaintiff did not require insulin therapy. (R. at 251.) Plaintiff's compliance with his treatment was poor. (R. at 251.) Dr. Neeley told Plaintiff that he should restart his medications and return for a physical at a later date. (R. at 252.) Dr. Neeley additionally noted that he advised Plaintiff several months before to take his medications as directed. (R. at 252.)

On September 10, 2010, David Taminger, M.D. saw Plaintiff, who complained of right shoulder pain and stiffness. (R. at 259.) Rest helped Plaintiff with his pain. (R. at 259.) An examination showed that Plaintiff had limited range of motion in his shoulder. (R. at 260.) Dr. Taminger referred Plaintiff to an orthopedic on-call center. (R. at 260.)

At the orthopedic on-call center, Plaintiff complained that he could not lift his arm. (R. at 281.) He needed to lift items, because he worked as a caregiver. (R. at 281.) Plaintiff stated that a cortisone shot had given him brief relief. (R. at 281.) An MRI of Plaintiff's shoulder showed rotator cuff tendinopathy with partial thickness tearing, mild osteoarthritis in the acromioclavicular joint and an abnormal signal in the superior labrum. (R. at 264-65, 272, 283-84.)

Plaintiff saw Marion Herring, M.D. and reported increased shoulder pain with twisting, lifting and reaching. (R. at 277-78.) Dr. Herring diagnosed Plaintiff with shoulder adhesive capsulitis, administered cortisone injections to Plaintiff's right shoulder and prescribed oral

3

steroids. (R. at 277-78.) Dr. Herring's examination revealed some pain, normal shoulder motion, no atrophy, normal sensation, normal hands and full motor strength throughout. (R. at 277.) Dr. Herring reviewed Plaintiff's earlier MRI and concluded that it showed rotator cuff tendonitis and a small rotator cuff tear. (R. at 278.) Dr. Herring advised Plaintiff to take two Aleve twice per day and undergo physical therapy. (R. at 278.)

Three weeks later, Plaintiff saw Dr. Herring for a follow-up appointment. (R. at 279.) A physical examination revealed the same results. (R. at 279.) Ibuprofen provided Plaintiff with short-term relief. (R. at 279.) Plaintiff declined a second shot. (R. at 280.)

On October 4, 2010, Jane Johnson, P.T. of Advanced Orthopedic Centers Physical Therapy, noted that Plaintiff had pain lifting overhead, but no pain lifting from floor to waist level. (R. at 287.) Plaintiff reported increased pain with no relief since his previous cortisone shot. (R. at 287.) An examination revealed that Plaintiff had extremely limited shoulder motion. (R. at 287.) Ms. Johnson recommended that Plaintiff attend physical therapy twice each week for four weeks. (R. at 287.) Further, Ms. Johnson gave Plaintiff a copy of his home exercise program and encouraged him to perform his exercises several times daily. (R. at 287.) Four days later, the physical therapist noted that Plaintiff had decreased range of motion in the right shoulder with marked tightening and apprehension. (R. at 286.) Her treatment included moist heat, stabilization, passive range of motion, strengthening exercises and stretching. (R. at 286.)

C. State Agency Medical Opinion

Paula Nuckols, M.D., a state agency medical expert, reviewed Plaintiff's file both initially and on reconsideration. (R. at 66-68, 76-77.) Upon review, Dr. Nuckols opined that Plaintiff could perform light work with the following restrictions: no right overhead, frontal or lateral reaching. (R. at 67-68, 76-77.)

D. Plaintiff's Reported Activities.

Plaintiff completed a Pain Questionnaire on December 5, 2010. Plaintiff noted that he had shoulder, arm, neck and chest pain that had lasted for approximately three months. (R. at 208-09.) Cold weather and moving up and down caused the pain. (R. at 208.) The pain prevented Plaintiff from reaching. (R. at 209.) A heating pad sometimes helped to relieve the pain. (R. at 209.) He took several medications to cope with the pain, and they had no side effects. (R. at 209.)

Plaintiff completed an Adult Function Report. He stated that he exercised his arm with a heating pad. (R. at 210.) His injuries prevented him from being a mechanic at Greyhound and affected his sleep. (R. at 211.) He needed help with one arm when both bathing and putting on his shirt. (R. at 211.) Plaintiff could brush his hair with his left hand. (R. at 211.) His wife helped him shave and he needed help using the toilet sometimes, but he could generally feed himself. (R. at 211.) He did not need reminders to take care of his personal needs, nor did he need reminders to take medicine. (R. at 212.)

Plaintiff went outside twice a week and walked when he traveled. (R. at 213.) Additionally, he drove and could go out alone. (R. at 213.) He could pay bills and count change, though his injuries slowed his ability to handle money. (R. at 213-14.) Plaintiff did not have any problems getting along with others and his social activities had not changed since the onset of his conditions. (R. at 215.) He checked boxes indicating that his injuries limited his lifting, reaching and using his hands. (R. at 215.) He did not use a walker or cane. (R. at 216.)

E. Testimony before the ALJ

On February 27, 2012, Plaintiff, represented by counsel, testified before the ALJ. (R. at 25, 27-52.) Plaintiff lived with his adult children. (R. at 41.) He did not perform chores around

the house, but he could try to do them if necessary. (R. at 46-47.) Plaintiff had driven a week before the hearing, going to the store. (R. at 47-48.) He could dress himself to a degree, but his hands were numb in the morning. (R. at 45.) He could generally bathe himself without assistance, although his daughter helped him sometimes. (R. at 45.)

Plaintiff had not worked since his alleged onset date of September 10, 2010. (R. at 32.) He had previously filed for and received workers compensation benefits related to a neck, back and chest injury. (R. at 33-34.) Plaintiff did not need any assistive device to walk. (R. at 34.) Depending on the weather, his pain ranged from zero to five on a scale of one to ten, with ten being the most pain. (R. at 35-36.) He took several medications, which helped ease his pain. (R. at 36, 48-49.) He did not take insulin for his diabetes. (R. at 48.)

Plaintiff estimated that he could lift two to three pounds. (R. at 36.) He could not lift a gallon of milk, nor could he lift a football. (R. at 37.) He could sit down for approximately an hour before having to move. (R. at 37.) He would experience shortness of breath when standing, and he could walk about fifteen to twenty minutes at a time. (R. at 37-38.)

Plaintiff had no problems getting along with others. (R. at 40.) He could follow written and verbal directions to a degree, but did not use a computer. (R. at 42-43.)

## II. PROCEDURAL HISTORY

On October 14, 2010, Plaintiff filed for SSI. (R. at 166-76.) On November 15, 2010, Plaintiff filed for DIB. (R. at 159-65.) In both claims, Plaintiff alleged disability stemming from chest, neck, back and shoulder pain and diabetes with an alleged onset date of September 10, 2010. (R. at 159, 166.) The Administration denied the claims both initially and on reconsideration. (R. at 81-82, 103-04.) On February 27, 2012, an ALJ held a hearing on Plaintiff's claims. (R. at 23-62.) Plaintiff, represented by counsel, testified at the hearing. (R. at

25, 27-52.) On March 29, 2012, the ALJ issued an opinion determining that Plaintiff was not disabled under the Act. (R. at 18.) On April 9, 2013, the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner and subject to judicial review by this Court (R. at 1-4.)

### III. QUESTIONS PRESENTED

1. Did the ALJ err in determining Plaintiff's residual functional capacity ("RFC")?
2. Did the ALJ properly assess Plaintiff's credibility?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, is less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)) (internal quotation marks omitted). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. An ALJ conducts the analysis for the Commissioner, and a court must examine that process on appeal to determine whether the ALJ applied the correct legal standards and whether substantial evidence on the record supports the resulting decision of the Commissioner. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R.

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.*

§ 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment, and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ must determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's RFC[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v.*

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.*

*Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

A.  The ALJ's Opinion.

The ALJ first determined that Plaintiff met the insured status requirements of the Act through March 31, 2011. (R. at 12.) At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in SGA since the alleged onset date of September 10, 2010. (R. at 12.) Next, the ALJ determined that Plaintiff had severe impairments consisting of diabetes, left and right shoulder arthritis and a history of rotator cuff tear. (R. at 12.) The ALJ determined that the impairments or combination thereof did not meet the severity of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. at 13.) Plaintiff did not have major dysfunction characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of the affected joints. (R. at 13.) Further, while that section does not specifically list diabetes as an impairment, Plaintiff's resulting symptoms are not so severe as to meet the requirements of any additional listing. (R. at 13.)

The ALJ then determined that Plaintiff had the RFC to perform light work, but with certain limitations involving no more than occasional handling, fingering and overhead reaching with hands bilaterally. (R. at 13.) Plaintiff could frequently climb stairs or ramps, balance, stoop, kneel, crouch and reach in all other directions, but could never crawl or climb ladders, ropes or scaffolding. (R. at 13-14.) He could occasionally be exposed to extreme cold, but should never be around moving mechanical parts. (R. at 14.) In determining that Plaintiff could perform limited light work, the ALJ relied on Plaintiff's medical history as well as Plaintiff's own testimony and reports. (R. at 13-16.) After considering Plaintiff's age, education, past work and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff could perform. (R. at 17.)

Plaintiff argues that the ALJ did not properly assess the impact of Plaintiff's pain when determining Plaintiff's RFC and when assessing Plaintiff's credibility. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") (ECF No. 12) at 1-2.) Defendant responds that substantial evidence supports both of the ALJ's determinations. (Def.'s Mot. for Summ. J. and Mem. in Support ("Def.'s Mem.") (ECF No. 13) at 10-15.)

B. The ALJ did not err in assessing Plaintiff's RFC.

Plaintiff argues that the ALJ did not assess the impact of pain upon Plaintiff when determining Plaintiff's RFC. (Pl.'s Mot. at 1.) Defendant maintains that substantial evidence supports the ALJ's RFC assessment. (Def.'s Mem. at 10.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, an ALJ will first assess the nature and extent of the claimant's physical limitations, and then determine the

claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). Generally, it is the responsibility of the claimant to provide the evidence that the ALJ utilizes in making his RFC determination; however, before a determination is made that a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 404.1545(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.

After careful consideration of the record, the ALJ determined that Plaintiff had the RFC to perform light work, except that Plaintiff

> is further limited to jobs that involve no more than occasional handling, fingering, and overhead reaching with his hands bilaterally. He can frequently climb stairs or ramps, balance, stoop, kneel, crouch, and reach in all other directions with his hands bilaterally. However, he can never crawl or climb ladders, ropes, or scaffolding. [Plaintiff] can occasionally be exposed to extreme cold, but he should never be around moving mechanical parts.

(R. at 13-14.) "Light work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(b). Although the weight lifted may be little, a job is light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* An individual must be able to perform "substantially all of these activities" to be capable of performing light work. *Id.*

In coming to the determination that Plaintiff could perform light work with some limitations, the ALJ relied on Plaintiff's medical history as well as Plaintiff's own testimony and reports. (R. at 13-15.) Plaintiff's medical records support the ALJ's determination. Plaintiff's physical examinations noted normal gait. (R. at 255.) Dr. Herring's examination showed normal shoulder motion, no atrophy and full motor strength throughout. (R. at 277.) Dr. Nuckols

12

opined that Plaintiff could perform light work with restrictions, including no right overhead, frontal or lateral reaching. (R. at 67-68, 76-77.) Dr. Neeley noted that in 2009, Plaintiff's compliance with his treatment was poor, and that on at least two occasions, Dr. Neeley advised Plaintiff that he needed to take his medication as directed. (R. at 251-52.)

Plaintiff's own statements further support the ALJ's determination. Plaintiff had the ability to dress himself to a degree and care for his hair. (R. at 211.) He could walk when he travelled places. (R. at 213.) In addition, Plaintiff could drive himself, went out alone and did not need assistance when walking. (R. at 213, 216.) Plaintiff stated that the pain kept him from reaching. (R. at 209.) Further, a heating pad relieved that pain occasionally. (R. at 209.) He could sit for one to two hours. (R. at 37.) He could stand for a short period before becoming winded, and he could walk fifteen to twenty minutes. (R. at 37-38.) Additionally, depending on the weather, Plaintiff's pain remained between a zero and a five on a ten-point scale with ten being the most pain. (R. at 35-36.)

Therefore, substantial evidence supports the ALJ's RFC determination that Plaintiff could perform light work with restrictions.

C. The ALJ did not err in assessing Plaintiff's credibility.

Plaintiff argues that the ALJ failed to consider the impact of pain upon Plaintiff. (Pl.'s Mot. at 1.) Defendant maintains that substantial evidence supports the ALJ's assessment of Plaintiff's credibility. (Def.'s Mem. at 11.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the

claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5 n.3; *see also* SSR 96-8p, at 13.

If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the Plaintiff's impairments and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms. The ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

After considering the evidence here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 15.) The ALJ, however, did not find Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms credible to the extent that the statements were inconsistent with his previous RFC assessment, which indicated that Plaintiff could perform light with some restrictions. (R. at 15.)

Plaintiff's medical records support this determination. Plaintiff claims that he cannot work because of diabetes and neck and shoulder pain. (R. at 208.) Dr. Neeley reported, however, that oral medications managed Plaintiff's diabetes, although Plaintiff did have poor

14

compliance with that treatment. (R. at 251.) Though Plaintiff had a limited range of motion, rest helped Plaintiff with the pain. (R. at 259-60.) Dr. Herring's examination revealed some pain, but normal shoulder motion and full motor strength. (R. at 277.) Plaintiff reported on October 4, 2010, that he had pain lifting overhead, but no pain lifting from the floor to his waist. (R. at 287.)

Plaintiff's own statements and reports further support the ALJ's determination. Plaintiff reported that while the pain affected his reaching, a heating pad helped to relieve the pain. (R. at 208-09.) He took several medications for the pain without side effect. (R. at 209.) Plaintiff exercised his arm with a heating pad. (R. at 211.) Though he required some help with one arm when bathing and putting on his shirt, he generally could get dressed and bathe. (R. at 211.) Plaintiff could brush his hair and generally feed himself. (R. at 211.) Further, he did not need reminders to take care of himself or take his medications. (R. at 212.) Plaintiff testified that his pain on a scale of one to ten, with ten being the most pain, generally was between zero and five, depending on the weather conditions. (R. at 35-36.)

Plaintiff noted that he could walk when he travelled places and that he did not need a walker or cane to assist in walking. (R. at 213, 216.) He could also drive. (R. at 213.) Plaintiff could go out alone as well. (R. at 213.) Plaintiff reported that he had no problem getting along with others and his social activities had not changed since the onset of his conditions. (R. at 215.)

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. &*

15

*Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)). The ALJ did not err in reaching his credibility evaluation here, because substantial evidence supported his decision.

## VI. CONCLUSION

For the reasons set forth herein, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne, to Plaintiff at his address and to and all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                 /s/
                                                      David J. Novak
                                                      United States Magistrate Judge

Richmond, Virginia
Dated: January 7, 2014